# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Bradley Hoyt, 430 Oak Grove, LLC,<br>and Continental Property Group, Inc., | Civil No. 10-CV-3680 (SRN/FLN) |
| **Plaintiffs,** | **ORDER** |
| v. | |
| Lisa R. Goodman, Scott Mayer, and<br>Michael Marn, | |
| **Defendants.** | |

LuAnn M. Petricka, Petricka Law Firm, PA, 527 Marquette Ave. South, Suite 2100, Minneapolis, Minnesota 55402; Rolin L. Cargill & William R. Skolnick, Skolnick & Shiff, PA, 527 Marquette Ave. South, Suite 2100, Minneapolis, Minnesota 55402, for Plaintiffs

Charles N. Nauen & Gregory J. Myers, Lockridge, Grindal, Nauen, PLLP, 100 Washington Ave. South, Suite 2200, Minneapolis, Minnesota 55401, for Defendant Goodman

Christopher J. Hoffer, Bolt & Hoffer Law Firm, 3340 Northdale Blvd. Northwest, Suite 130, Coon Rapids, Minnesota 55448, for Defendants Mayer and Marn.

SUSAN RICHARD NELSON, United States District Court Judge

Before the Court is the Motion to Dismiss filed by Defendant Goodman [Doc. No. 3] and the Motion to Dismiss filed by Defendants Mayer and Marn [Doc. No. 13].  Following the February 23, 2011 hearing on these motions, the Court ordered a stay in this matter pending final resolution of a related state court proceeding.  (Order of 3/29/11 [Doc. No. 35].)   The Minnesota Court of Appeals has since ruled on the appeal in question and certain of the issues raised in Defendants' pending federal motions are ripe for resolution.  For the reasons set forth below, the Court grants the Motion to Dismiss filed by Defendants Mayer and Marn.  In

addition, the Court grants, in part, Defendant Goodman's Motion to Dismiss as to Plaintiffs'

conspiracy claim.   In order to provide the parties with the opportunity to argue about the impact,

if any, of the Minnesota Court of Appeals' opinion on the claims at issue in Defendant

Goodman's pending Motion to Dismiss, the Court requests supplemental briefing from Plaintiffs

and Defendant Goodman as more fully set forth below.

## I.    BACKGROUND

Plaintiffs Bradley Hoyt, 430 Oak Grove, LLC ("Oak Grove") and Continental Property

Group, Inc. ("CPG"), allege civil conspiracy and violations of 42 U.S.C. § 1983 against

Minneapolis City Council Member Lisa Goodman, and Minneapolis residents Scott Mayer and

Michael Marn.  The litigation concerns a proposed property development known as Parc

Centrale.  Plaintiff Oak Grove is the current owner of real property located in the Loring Park

area of  Minneapolis, Minnesota, on which Park Centrale was planned to be built.  (Complaint ¶¶

1-2.)  Plaintiff CPG owned an option to purchase the property during the relevant time period.

Plaintiff Hoyt is the sole owner of Oak Grove and CPG.  (Id. ¶ 3.)

### A.    Parc Centrale Applications

After having hired an architectural firm to design the Parc Centrale project, CPG applied

to the City of Minneapolis (the "City") for two conditional-use permits ("CUPs"): one to

increase the maximum permitted height from 2.5 stories to 21 stories, and a second to allow for a

mulitple-family project containing 104 units.  CPG also applied for two variances concerning

yard setbacks.  The City's Community Planning and Economic Development ("CPED") staff

reviewed Plaintiffs' applications and issued a 14-page report recommending that the City's

Planning Commission deny the requested variances and conditional use permits.  The Planning

Commission voted to adopt the CPED's recommendation and denied Plaintiffs' requests for the variances and conditional use permits.  (Id. ¶ 22.)  Plaintiffs appealed the decision to the Minneapolis City Council.

The Planning Commissions's recommendation was first reviewed by the City Council's Zoning and Planning Committee, made up of five city council members, including Defendant Goodman.  (Id. ¶ 23.)   Plaintiffs allege that Goodman, along with neighborhood community activists Mayer and Marn, conspired to organize opposition to Plaintiffs' Parc Centrale applications.  (Id. ¶¶ 19-20.)   At a September 15, 2004 quasi-judicial proceeding, the Zoning and Planning Committee considered testimony from CPED staff, Plaintiffs' representatives and neighbors.  Ultimately, the Zoning and Planning Committee unanimously recommended the denial of Plaintiffs' appeal.  (Id.)   In September 2004, the full City Council unanimously adopted the findings and recommendations of the Zoning and Planning Committee. (Id. ¶ 24.)

Plaintiffs contend that Defendant Goodman inappropriately lobbied certain council members to vote against the project and enlisted Defendants Mayer and Marn to similarly lobby members of the Zoning and Planning Committee.  (Id. ¶ 26.)  Specifically, Plaintiffs contend that Goodman sent email messages in which she falsely accused Plaintiff Hoyt of threatening her, that Marn and Mayer presented a petition to the Zoning and Planning Commission distorting the neighborhood opposition to Parc Centrale, and that Goodman characterized supporters of the project as "nuts," and Plaintiff Hoyt as a "scumbag."  (Id. ¶¶ 26, 31.)  Plaintiffs further allege that, despite receiving advice from the Minneapolis City Attorney's Office concerning proper, non-biased conduct when conducting quasi-judicial proceedings and the need for due process and a fair hearing,  Defendant Goodman nonetheless emailed her constituents just days before

the September 15, 2004 hearing, telling them that she would 'vociferously advocate against' the appeal.  (Id. ¶¶ 28-29.)

Despite the opposition to their proposed development, CPG exercised its option to purchase the property later in September 2004.  In November 2004, it submitted an application for a second proposed project on the property. The project design consisted of a seven-story, 74-unit building and required CUPs for height and density as well as a site-plan review.  The project design did not require any variances, however.  In January, CPED staff issued a report recommending the approval of the project to the Planning Commission.  However, one month later, CPG withdrew its application, citing increasing construction costs.

Plaintiffs further allege that in February 2005, Defendants were working to establish a moratorium to stop any modified development of the property by Plaintiffs.  (Id. ¶ 33.)  At the time, Defendant Marn was a member of the Citizens for a Loring Park Community land use planning committee.  (Id. ¶ 33.)  Defendant Goodman emailed Mayer, "Please do not pass this email to your friends and neighbors as a moratorium is a very heavy-handed legal action and I need to make sure we have good grounds to act on one prior to doing so."  (Id. ¶ 34.)  In May 2005, the City Council passed the construction moratorium for the Loring Hill area, to allow for a study to "inform the future of the area." (Mpls. Ord. Chap. 579, Ex. 10 to Myers Aff.)  The moratorium was to expire on April 1, 2006.  (Id.)  At the time, the only pending application impacted by the moratorium was a revised application of Plaintiff CPG for the property in question.  (Complaint ¶ 39.)  Plaintiffs formally requested a waiver from the moratorium, which the City Council's Zoning and Planning Committee rejected.  (Id. ¶ 44.)

4

B.      State Court Litigation

In March 2007, Plaintiffs Hoyt and CPG filed suit in state court against the City of Minneapolis alleging violations of due process and equal protection, seeking declaratory and injunctive relief, damages and attorney's fees under 28 U.S.C. § 1983.  (See Hennepin Cty. Dist. Ct. Order of 9/16/09 at 5, Ex. 1 to Affidavit of Gregory J. Myers in Supp. Def. Goodman's Mot. to Dismiss.)   In August 2008, the state court heard the City's motion for summary judgment, subsequently granting it as to the plaintiffs' equal protection claim, but denying it as to the due process claim. (Id.)

After an attempt by the City to remove the case to federal court, the case was remanded to the Hennepin County District Court on February 12, 2009.  (Id. at 6.)  The City then moved the district court for reconsideration of its summary judgment order and asked that the case be dismissed on the grounds that the plaintiffs failed to make a required showing of hardship in its application for variances.  The district court found that the plaintiffs did not make a showing of hardship in connection with the request for variances as part of their application, but allowed plaintiffs to argue at trial that there was an additional equal protection violation in the treatment of the plaintiffs' application compared to other applications (i.e., plaintiffs could submit evidence that the City routinely ignored the hardship requirement).  (Hennepin Cty.  Dist. Ct. Order of 5/7/09, Ex. 14 to Myers Aff.; Hennepin Cty. Dist. Ct. Order of 4/29/10 at 4-5, Ex. 3 to Affidavit of Andrew H. Bardwell.)

The matter was tried in a bench trial in the summer of 2009.  In its Findings of Fact, Conclusions of Law and Order, Hennepin District Court Judge Stephen Aldrich dismissed the plaintiffs' equal protection claim. (Hennepin Cty. Dist. Ct. Order of 9/16/09 at 11, Ex. 1 to

Myers Aff.)  The district court also dismissed the plaintiffs' substantive due process claim, concluding that the City had multiple rational bases on which to deny the proposal.  However, the court found a procedural due process violation in light of Council Member Goodman's improper and impermissible advocacy efforts and ordered a separate phase of trial on remedies and damages on that claim alone.  (Id. at 20.)  Prior to the damages phase of trial, CPG submitted a trial memorandum stating that it had additional evidence to submit on the moratorium issue, which the district court had "not allowed" it to present during the liability phase because it was untimely.  The district court denied CPG's request to submit additional evidence on the moratorium issue and clarified that its claims with respect to the moratorium were "dismissed with prejudice."  See Continental Property Group v. City of Minneapolis, No. A10-1072, 2011 WL 1642510, * 8 (Minn. Ct. App. May 3, 2011).

In the remedies and damages phase of trial, held on December 21-23, 2009, the plaintiffs sought lost profits of over $23 million (which they subsequently reduced to $11.6 million), out-of-pocket expenses of over $250,000 and attorney's fees and costs of over $522,000.  (Def. Goodman's Mem. Supp. Mot. Dismiss at 8.)  The district court awarded the plaintiffs $165,369 in compensatory damages for out-of-pocket expenses and $357,523 in attorney's fees and costs. (Hennepin Cty. Dist. Ct. Order of 4/29/09, Ex. 17 to Myers Aff.)   The City appealed and the plaintiffs cross-appealed.

The Minnesota Court of Appeals ruled that the plaintiffs had no protected property interest in their CUP and variance applications and therefore no right to due process in the application-review process.  Continental Property Group, 2011 WL 1642510 at * 3-6.  However, pursuant to the plaintiffs' appeal of the dismissal of its claim for statutory judicial review under

Minn. Stat. § 462.361, subd. 1, the Court of Appeals concluded that the city council relied on

factors it was not intended or permitted to consider (i.e., Goodman's bias) and that the district

court erred by upholding this ground of review under Minn. Stat. § 462.361, subd. 1, id. at *6-7,

which provides that:

> Any person aggrieved by an ordinance, rule, regulation, decision or order of a
> governing body or board of adjustments and appeals acting pursuant to sections
> 462.351 to 462.364 may have such ordinance, rule, regulation, decision or order,
> reviewed by an appropriate remedy in the district court, subject to the provisions
> of this section.

citing Minn. Stat. § 462.361, subd. 1.

The Court of Appeals held that a reviewing court must evaluate whether the

municipality's action was reasonable, and an action may be considered unreasonable if it was

arbitrary and capricious, or if the municipality's stated reasons have no bearing on the general

welfare of the immediate area in question.  Continental Property Group, 2011 WL 1642510 at *6

(citing VanLandschoot v. City of Mendota Heights, 336 N.W.2d 503, 508 (Minn. 1983)).

Because of Councilmember Goodman's advocacy role with respect to the Parc Centrale, the

court found that "the city council relied on factors it was not intended or permitted to consider in

denying CPG's applications."  Id.   Also, the court noted that the City's actions would not

necessarily have been arbitrary and capricious had it "not allowed a biased councilmember to

participate in the decision."  Id. at *7.  The court therefore remanded to the Minneapolis City

Council for a new hearing and decision.   Id. at *7.

CPG also appealed the district court's refusal to entertain evidence relating to the effect

of the moratorium on its damages claims. The appellate court rejected this ground of appeal

because CPG failed to preserve the issue below by moving for a new trial.  Id. at *8.  Finally, the

court reversed the district court's award of damages (based on the § 1983 claims that the city

violated the plaintiffs' constitutional rights) and reversed the award of attorney's fees. The

Court held that attorney's fees were not to be awarded to the City. Id. at *9. The Minnesota

Supreme Court denied further review. (Order of 7/19/11, CPG v. City of Minneapolis,

A10-1072 (Minn. 2011) [Doc. No. 39].)

### C.      Federal Litigation

Plaintiffs filed the instant suit in July 2010 in state court and Defendant Goodman

removed the case to federal court in August 2010. In this case, Plaintiffs allege the same

underlying operative facts and similar claims, but allege those claims against individual

defendants, as opposed to the City. Again, Plaintiffs allege violations of 42 U.S.C. § 1983

related to Defendants' actions regarding the Parc Centrale applications and the 2005 moratorium

and also allege conspiracy. In their motions to dismiss, Defendants argue: (1) that Plaintiffs'

claims are barred by the holdings in state court; (2) that Plaintiffs' claims are barred by

immunity; (3) that Plaintiffs' claims fail on the merits; (4) that Plaintiffs' claims are barred by

Minnesota's statute concerning strategic litigation against public participation ("SLAPP"), Minn.

Stat. §§ 554.01-.05; and (5) that Plaintiffs should compensate Defendants for attorney's fees and

costs in defending this litigation.

## II.    DEFENDANTS' MOTIONS

### A.      Motion to Dismiss by Defendants Mayer & Marn

As a preliminary matter, while private actors are not ordinarily liable for actions brought

under § 1983, there are instances in which private actors, acting in concert with an officer of the

state, may be held liable. DuBose v. Kelly, 187 F.3d 999, 1003 (8th Cir. 1999). The Supreme

Court has held:

> To act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions .... [H]ere the allegations were that an official act of the defendant judge was the product of a corrupt conspiracy involving bribery of the judge. Under these allegations, the private parties conspiring with the judge were acting under color of state law . . . .

Dennis v. Sparks, 449 U.S. 24, 27-29 (1980).  The parties do not brief this issue, focusing instead on the application of the anti-SLAPP statute.  There is an allegation that Defendant Marn was affiliated with a neighborhood organization, although there is no discussion of its status as a governmental entity.

Defendants Mayer and Marn join in the motion brought by Goodman, but also argue that they are immunized from liability because Plaintiffs' claims are encompassed by Minnesota's anti-SLAPP statute.  In 1994, the Minnesota Legislature enacted an anti-SLAPP statute "[t]o protect citizens and organizations from lawsuits that would chill their right to publicly participate in government."  Marchant Inv. & Mgmt. Co. v. St. Anthony W. Neighborhood Org., Inc., 694 N.W.2d 92, 94-95 (Minn. Ct. App. 2005).  Under the terms of the statute, a party may bring a motion to dismiss a claim on the ground that the claim "materially relates to an act of the moving party that involves public participation," and invoke immunity.  Minn. Stat. § 554.02, subd. 1. Public participation is defined as "speech or lawful conduct that is genuinely aimed in whole or in part at procuring favorable government action."   Minn. Stat. § 554.02, subd. 6.  "Only lawful, non-tortious conduct or speech" is immunized from liability under the statute.  Nexus v. Swift, 785 N.W.2d 771, 780-81 (Minn. Ct. App. 2010) (citing Minn. Stat. § 554.03)).  A moving party's motion to dismiss must be granted "unless the court finds that the responding party has

produced clear and convincing evidence that the acts of the moving party are not immunized

from liability under section 554.03."  Minn. Stat. § 544.02, subd. 2(3).   The Minnesota Supreme

Court has described this standard as a heavy burden.  <u>Middle-Snake-Tamarac Rivers Watershed</u>

<u>District v. Stengrim</u>, 784 N.W.2d 834, 839 (Minn. 2010).

      Typically, a SLAPP suit involves persons who oppose proposed real estate development

plans, who "find themselves facing a lawsuit  – typically a tort claim such as slander or libel –

brought against them with the goal of silencing dissent."  <u>Id.</u> (citing <u>In re Conditional Use Permit</u>

<u>& Preliminary Planned Unit Dev. Applications of Living Word Bible Camp</u>, No. A06-1374,

2008 WL 2245708, at *1, *4 (Minn. Ct. App. June 3, 2008) (dismissing the county's malicious

prosecution and abuse-of-process counterclaims against citizens pursuant to an anti-SLAPP

motion, where the citizens challenged the county's grant of permit applications of a bible-camp

developer); <u>Marchant</u>, 694 N.W.2d at 97-98 (dismissing a developer's defamation claim against

a neighborhood organization following the neighborhood organization's anti-SLAPP motion).

      Courts, at their discretion, may permit some limited discovery "on motion and after a

hearing and for good cause shown" to supplement the record on any issue where discovery is

warranted related to the anti-SLAPP statute.  Minn. Stat. § 554.02, subd. 2(1) ( "discovery must

be suspended pending the final disposition of the [motion to dismiss based on the anti-SLAPP

statute], including any appeal; provided that the court may, on motion and after a hearing and for

good cause shown, order that specified and limited discovery be conducted."); <u>Nexus</u>, 785

N.W.2d at 781.

      Turning to the conduct of Mayer and Marn, Plaintiffs contend that these two Defendants

were involved in lobbying members of local government in opposition to the Parc Centrale

applications.  (Compl. ¶¶ 19, 20, 26.)  In furtherance of their opposition, Mayer and Marn

allegedly sent emails and circulated and presented petitions to the Zoning and Planning

Commission. (Id. ¶ 26.)   Plaintiffs also allege that Goodman, Mayer and Marn conspired

together to deprive Plaintiffs of their constitutional rights with respect to the application process

and also regarding their efforts to pass a one-year building moratorium that Plaintiffs allege was

aimed at them.  (Id. ¶¶ 33-44.)  Although there is limited case law addressing what constitutes

the requisite conduct for invoking the protection of Minnesota's anti-SLAPP statute, Mayer and

Marn's conduct is typical of the conduct implicated by the anti-SLAPP statute.  See In re Living

Word Bible Camp, 2008 WL 2245708, at *1, *4: Marchant, 694 N.W.2d at 97-98.   Their

lobbying and organizing efforts constitute public participation aimed at procuring favorable

government action and are materially related to Plaintiffs' claims against them.

       The next question then is whether Plaintiffs have alleged facts that would clearly and

convincingly show that Mayer and Marn's actions constituted a violation of § 1983 and civil

conspiracy.  First, with respect to any constitutional violations stemming from Plaintiffs'

applications, the Minnesota Court of Appeals has ruled on this very issue and found no due

process or equal protection violations.  The only remaining allegations that might support a §

1983 claim are those that were not officially adjudicated on the merits in state court, i.e.,

Plaintiffs' allegations regarding the 2005 moratorium.  Plaintiffs allege that the three Defendants

were working to have a moratorium established and "continued the conspiracy against Hoyt and

his companies."  (Id. ¶¶ 33-35.)  Plaintiffs also allege that Marn was a member of the Citizens

for a Loring Park Community ("CLPC") land use planning committee.  (Id. ¶ 33.)  Plaintiffs

contend that the alleged basis for the moratorium was to allow the City to conduct a detailed

study regarding the impact of development on neighboring buildings and that CLPC would have been responsible for carrying out the study.  (Id. ¶ 37.)  Nevertheless, Plaintiffs allege that "Goodman cut CLPC out of this process," (id.), and, somewhat contradictorily, "Goodman, Mayer and Marn knew that CLPC also did not have the funds with which to undertake the study."  (Id. ¶ 38.)   Plaintiffs also contend that at the time of the moratorium, CLPC documented only one pending application impacted by the moratorium – that of Plaintiff CPG.  (Id. ¶ 38.)

Plaintiffs appear to have alleged the bare bones of a possible equal protection argument with respect to Defendants' actions concerning the moratorium.  However, the anti-SLAPP statute requires a showing of clear and convincing evidence.  Plaintiffs have cited to no legal authority supporting their position that the passage of a moratorium constitutes a constitutional violation, nor do they otherwise clearly and convincingly show that Mayer and Marn violated their constitutional rights with respect to the moratorium.  Plaintiffs apparently concede that they have not met the clear and convincing standard, stating, "Plaintiffs have alleged sufficient facts to suggest the existence of clear and convincing evidence that Mayer and Marn conspired with Goodman" in violation of § 1983.  (Pls' Reply Mem. at 33 [Doc. No. 22]) (emphasis added).  Plaintiffs merely cite their allegations about the fact that Defendants met, engaged in certain activities, and exchanged email.  (Pls' Reply Mem. at 33 [Doc. No. 22].)  Plaintiffs therefore request an opportunity to prove these allegations and to supplement them through discovery.  (Id.)  Plaintiffs, however, do not meet the anti-SLAPP statute's requirement of demonstrating "good cause" for additional discovery, particularly as they were aware of their moratorium-related claims in the state court action.  (See Trial Transcript, Ex. 15 to Myers Aff.)  Therefore, because the conduct of Mayer and Marn is encompassed by the anti-SLAPP statute

12

and Plaintiffs have failed to meet the clear and convincing showing that is required, the Motion

to Dismiss filed by Defendants Mayer and Marn is granted.

### B.      Effect of Dismissing Claims Against Mayer and Marn on Civil Conspiracy Claim Against the Remaining Defendant, Ms. Goodman

Plaintiffs allege a civil conspiracy between Goodman, Mayer and Marn.  By virtue of

ruling in favor of Defendants Mayer and Marn based on the anti-SLAPP statute, the Court finds

that Plaintiffs' civil conspiracy claim against Defendant Goodman, the remaining defendant, fails

as a matter of law.

"A conspiracy is a combination of persons to accomplish an unlawful purpose or a lawful

purpose by unlawful means." Harding v. Ohio Cas. Ins. Co.,  41 N.W.2d 818, 824 (Minn. 1950)

(emphasis added). Civil conspiracy requires the conspirators to have a meeting of the minds as to

plan or purpose of action to achieve a certain result. Bukowski v. Juranek, 318, 35 N.W.2d 427,

429 (Minn. 1948).  In addition, an underlying tort must be present to support a civil conspiracy

claim. D.A.B. v. Brown, 570 N.W.2d 168, 172 (Minn. Ct. App.1997).  A conspiracy, by its

definition, therefore requires the participation and involvement of more than one person.  As

Defendant Goodman is the sole remaining defendant, and Plaintiffs do not allege that she

conspired with anyone other than Mayer and Marn, Plaintiffs' conspiracy claim fails.  To that

extent, the Court grants, in part, Defendant Goodman's Motion to Dismiss.

### C.      Defendant Goodman's Motion to Dismiss

As noted, Defendant Goodman raises a number of grounds in her Motion to Dismiss,

including collateral estoppel, immunity and dismissal on the merits.  However, in the related

state court action, the Minnesota Court of Appeals reversed and remanded as to one issue raised

in the state court appeal – whether the district court erred in dismissing Plaintiffs' claim for

judicial review under Minn. Stat. § 462.361, subd. 1.  The court's remedy was to require a new

hearing and decision.  In reaching its decision, the Minnesota Court of Appeals did more than

simply find that Plaintiffs were entitled to judicial review – it found that the City Council's

decision was arbitrary and capricious.

> But when deciding CPG's procedural due-process claim, the district court found
> that Councilmember Goodman, who took part in making the council's decision:
> "took a position in opposition and exhibited a closed mind with regard to [CPG's]
> proposed project prior to hearing [CPG's] appeal"; "adopted an advocacy role in
> opposition to [CPG's] proposed project well before she discharged her
> quasi-judicial duties"; and "was clearly involved in an effort not only to assist to
> organize and mobilize neighborhood opposition to the project, but also to sway the
> opinions of her fellow council members." The court also noted that "the opinion of
> the council member in whose ward a project is proposed is given substantial
> weight" by other members of the council.

Continental Property Group, 2011 WL 1642510 at *6.  The Minnesota Court of Appeals then

concluded that the City Council "relied on factors it was not intended or permitted to consider in

denying CPG's allegations."  Id.  Because the Minnesota Court of Appeals found that the district

court erred in upholding the City Council's decision on review under Minn. Stat. § 462.361, subd.

1, the court remanded to the Minneapolis City Council for a new hearing.  Id. at *7.  As noted, the

Minnesota Supreme Court denied review.  (Order of 7/19/11, CPG v. City of Minneapolis,

A10-1072 (Minn. 2011) [Doc. No. 39].)

This ruling greatly impacts Plaintiffs' § 1983 claim before this Court, particularly as the

Minnesota Court of Appeals found that the original hearing was arbitrary and capricious due to

Councilmember Goodman's conduct.  The Court therefore requires supplemental briefing on the

parties' positions in this motion in light of the state court ruling.  In particular, it would be helpful

for the Court to be advised of the status of a new City Council hearing.  If action is taken to

remedy the issue raised by the Minnesota Court of Appeals, this motion may be moot.  The Court

also directs the parties to address whether the hearing implicates the doctrine of abstention or issue preclusion in favor of the Plaintiffs.  After receiving the supplemental briefing, the Court will determine whether to entertain a status conference with the parties.  Defendant Goodman shall file a supplemental memorandum by January 16, 2012, to which Plaintiffs shall file a response by January 30, 2012.  Defendant Goodman's reply memorandum shall be filed by February 6, 2012.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion to Dismiss filed by Defendants Mayer and Marn [Doc. No. 13] is **GRANTED**;

2. Plaintiffs' claims against Mayer and Marn are **DISMISSED WITH PREJUDICE;**

3. Defendant Goodman's Motion to Dismiss [Doc. No. 3] is **GRANTED IN PART**, as to the conspiracy count;

4. Plaintiffs' conspiracy claim against Defendant Goodman is **DISMISSED WITH PREJUDICE**; and

5. Plaintiffs and Defendant Goodman are to provide supplemental briefing regarding Defendant Goodman's Motion to Dismiss [Doc. No. 3].  Defendant Goodman's memorandum shall be filed by January 16, 2012, to which Plaintiffs shall file a response by January 30, 2012.  Defendant Goodman's reply memorandum shall be filed by February 6, 2012

Dated:    December 12, 2011

<div style="margin-left: 40%;">

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Court Judge

</div>

16