## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

**Bradley Hoyt, 430 Oak Grove, LLC,**                    Civil No. 10-CV-3680 (SRN/FLN)
**and Continental Property Group, Inc.,**

      **Plaintiffs,**                                      **ORDER**

**v.**

**Lisa R. Goodman,**

      **Defendant.**

LuAnn M. Petricka, Petricka Law Firm, PA, 527 Marquette Ave. South, Suite 2100, Minneapolis, Minnesota 55402; Rolin L. Cargill & William R. Skolnick, Skolnick & Shiff, PA, 527 Marquette Ave. South, Suite 2100, Minneapolis, Minnesota 55402, for Plaintiffs

Charles N. Nauen & Gregory J. Myers, Lockridge, Grindal, Nauen, PLLP, 100 Washington Ave. South, Suite 2200, Minneapolis, Minnesota 55401, for Defendant Goodman

SUSAN RICHARD NELSON, United States District Court Judge

      Before the Court is the Motion to Dismiss filed by Defendant Goodman [Doc. No. 3].  In its order of December 12, 2011, the Court ruled on a portion of Defendant Goodman's motion, dismissing Plaintiffs' claim of conspiracy.  The Court also lifted the stay that had been in place and directed counsel for Plaintiffs and Defendant Goodman to file supplemental briefing. Having now reviewed all of the original and supplemental memoranda and exhibits, for the reasons set forth below, Defendant's motion is granted.

## I.    BACKGROUND

      Plaintiffs Bradley Hoyt, 430 Oak Grove, LLC ("Oak Grove") and Continental Property Group, Inc. ("CPG") allege violations of 42 U.S.C. § 1983 against Minneapolis City

Councilmember Lisa Goodman.  The litigation concerns a proposed property development

known as Parc Centrale.  Plaintiff Oak Grove is the current owner of real property located in the

Loring Park area of Minneapolis, Minnesota, on which Park Centrale was planned to be built.

(Complaint ¶¶ 1-2.)  Plaintiff CPG owned an option to purchase the property during the relevant

time period.  Plaintiff Hoyt is the sole owner of Oak Grove and CPG.  (Id. ¶ 3.)

### A.      Parc Centrale Applications

After having hired an architectural firm to design the Parc Centrale project, CPG applied

to the City of Minneapolis (the "City") for two conditional-use permits ("CUPs"): one to

increase the maximum permitted height from 2.5 stories to 21 stories, and a second to allow for a

mulitple-family project containing 104 units.  CPG also applied for two variances concerning

yard setbacks.  The City's Community Planning and Economic Development ("CPED") staff

reviewed Plaintiffs' applications and issued a 14-page report recommending that the City's

Planning Commission deny the requested variances and conditional use permits.  The Planning

Commission voted to adopt the CPED's recommendation and denied CPG's requests for the

variances and conditional use permits.  (Id. ¶ 22.)  CPG appealed the decision to the Minneapolis

City Council.

The Planning Commissions's recommendation was first reviewed by the City Council's

Zoning and Planning Committee, made up of five city council members, including Defendant

Goodman.  (Id. ¶ 23.)  At a September 15, 2004 quasi-judicial proceeding, the Zoning and

Planning Committee considered testimony from CPED staff, CPG's representatives and

neighbors.  Ultimately, the Zoning and Planning Committee unanimously recommended the

denial of CPG's appeal. (Id.¶¶ 19-20.)   In September 2004, the full City Council unanimously

adopted the findings and recommendations of the Zoning and Planning Committee. (Id. ¶ 24.)

Plaintiffs contend that Defendant Goodman inappropriately lobbied certain council

members to vote against the project and enlisted others to similarly lobby members of the Zoning

and Planning Committee.  (Id. ¶ 26.)  Specifically, Plaintiffs contend that Goodman sent email

messages in which she falsely accused Plaintiff Hoyt of threatening her and characterized

supporters of the project as "nuts," and Plaintiff Hoyt as a "scumbag."  (Id. ¶¶ 26, 31.)  Plaintiffs

further allege that, despite receiving advice from the Minneapolis City Attorney's Office

concerning proper, non-biased conduct when conducting quasi-judicial proceedings and the need

for due process and a fair hearing,  Defendant Goodman nonetheless emailed her constituents

just days before the September 15, 2004 hearing, telling them that she would 'vociferously

advocate against' the appeal.  (Id. ¶¶ 28-29.)

Despite the opposition to their proposed development, CPG exercised its option to

purchase the property later in September 2004.  In November 2004, it submitted an application

for a second proposed project on the property. The project design consisted of a seven-story,

74-unit building and required CUPs for height and density as well as a site-plan review.  The

project design did not require any variances, however.  In January, CPED staff issued a report

recommending the approval of the project to the Planning Commission.  However, one month

later, CPG withdrew its application, citing increasing construction costs.

Plaintiffs further allege that in February 2005, Defendant Goodman was working to

establish a moratorium to stop any modified development of the property by Plaintiffs. (Id. ¶

33.)  Defendant Goodman is alleged to have emailed former Co-Defendant Scott Mayer, a

citizen opposed to the development, "Please do not pass this email to your friends and neighbors

as a moratorium is a very heavy-handed legal action and I need to make sure we have good grounds to act on one prior to doing so." (Id. ¶ 34.)  In May 2005, the City Council passed the construction moratorium for the Loring Hill area, to allow for a study to "inform the future of the area." (Mpls. Ord. Chap. 579, Ex. 10 to Myers Aff.)  The moratorium was to expire on April 1, 2006.  (Id.)   At the time, the only pending application impacted by the moratorium was a revised application of Plaintiff CPG for the property in question.  (Complaint ¶ 39.)  CPG formally requested a waiver from the moratorium, which the City Council's Zoning and Planning Committee rejected.  (Id. ¶ 44.)

### B.      State Court Litigation

In March 2007, Plaintiff CPG filed suit in state court against the City of Minneapolis alleging violations of due process and equal protection, seeking declaratory and injunctive relief, damages and attorney's fees under 28 U.S.C. § 1983.  (See Hennepin Cty. Dist. Ct. Order of 9/16/09 at 5, Ex. 1 to Affidavit of Gregory J. Myers in Supp. Def. Goodman's Mot. to Dismiss.) In October 2008, the district court granted the City summary judgment on CPG's equal protection claim, but allowed CPG to proceed with its action under a due process theory and under Minn. Stat. § 462.361, subd. 1.

After an attempt by the City to remove the case to federal court, the case was remanded to the Hennepin County District Court on February 12, 2009.  (Id. at 6.)  The City then moved the district court for reconsideration of its summary judgment order and asked that the case be dismissed on the grounds that CPG failed to make a required showing of hardship in its application for variances.  The district court found that the plaintiff did not make a showing of hardship in connection with the request for variances as part of its application, but, on

reconsideration, allowed plaintiffs to argue at trial that there was an additional equal protection

violation in the treatment of CPG's application compared to other applications (i.e., CPG could

submit evidence showing that the City routinely ignored the hardship requirement).  (Hennepin

Cty.  Dist. Ct. Order of 5/7/09, Ex. 14 to Myers Aff.; Hennepin Cty. Dist. Ct. Order of 4/29/10 at

4-5, Ex. 3 to Affidavit of Andrew H. Bardwell.)

    The matter was tried in a bench trial in the summer of 2009.  In its Findings of Fact,

Conclusions of Law and Order, Hennepin District Court Judge Stephen Aldrich found that the

plaintiff's equal protection claim failed because CPG failed to establish that other applicants

were similarly situated. (Hennepin Cty. Dist. Ct. Order of 9/16/09 at 11, Ex. 1 to Myers Aff.)

The district court also ruled that CPG's substantive due process claim failed as well, concluding

that the City had multiple rational bases on which to deny the proposal.  However, the court

found a procedural due process violation in light of Councilmember Goodman's actions and

ordered a separate phase of trial on remedies and damages on that claim alone.  (Id. at 20.)

    Prior to the damages phase of trial, CPG submitted a trial memorandum stating that it had

additional evidence to submit on the construction moratorium issue, which the district court had

"not allowed" it to present during the liability phase because it was untimely.  The district court

denied CPG's request to submit additional evidence on the moratorium issue and clarified that its

claims with respect to the moratorium were "dismissed with prejudice."  See Continental

Property Group v. City of Minneapolis, No. A10-1072, 2011 WL 1642510, * 8 (Minn. Ct. App.

May 3, 2011).

    In the remedies and damages phase of trial, held on December 21-23, 2009, the plaintiff

sought lost profits of over $23 million (which it subsequently reduced to $11.6 million),

out-of-pocket expenses of over $250,000 and attorney's fees and costs of over $522,000.  (Def.

Goodman's Mem. Supp. Mot. Dismiss at 8.)  The district court awarded the plaintiff $165,369 in

compensatory damages for out-of-pocket expenses and $357,523 in attorney's fees and costs.

(Hennepin Cty. Dist. Ct. Order of 4/29/09, Ex. 17 to Myers Aff.)   The City appealed and the

plaintiff cross-appealed.

The Minnesota Court of Appeals ruled that CPG had no protected property interest in its

CUP and variance applications and therefore no right to due process in the application-review

process.  Continental Property Group, 2011 WL 1642510 at * 3-6.  However, with respect to

CPG's appeal of the dismissal of its claim for statutory judicial review, the Court of Appeals

concluded that the City Council relied on factors it was not intended or permitted to consider

(i.e., Goodman's bias) and that the district court erred by dismissing the plaintiff's claim under

Minn. Stat. § 462.361, subd. 1.  d. at *6-7.  The Minnesota judicial review statute provides that:

> Any person aggrieved by an ordinance, rule, regulation, decision or order of a
> governing body or board of adjustments and appeals acting pursuant to sections
> 462.351 to 462.364 may have such ordinance, rule, regulation, decision or order,
> reviewed by an appropriate remedy in the district court, subject to the provisions
> of this section.

Minn. Stat. § 462.361, subd. 1.

The Court of Appeals observed that, under the statute, a reviewing court must evaluate

whether the municipality's action was reasonable.  An action may be considered unreasonable,

the appellate court noted, if it was arbitrary and capricious, or if the municipality's stated reasons

for its decision have no bearing on the general welfare of the immediate area in question.

Continental Property Group, 2011 WL 1642510 at *6 (citing VanLandschoot v. City of Mendota

Heights, 336 N.W.2d 503, 508 (Minn. 1983)).   Because of Councilmember Goodman's

inappropriate advocacy with respect to the Parc Centrale, the court found that "the city council

relied on factors it was not intended or permitted to consider in denying CPG's applications." Id.

Also, the appellate court noted that the City's actions would not necessarily have been arbitrary

and capricious had it "not allowed a biased councilmember to participate in the decision." Id. at

*7. The appellate court therefore remanded CPG's variance and CUP applications to the

Minneapolis City Council for a new hearing and decision. Id. at *7.

CPG also appealed the district court's refusal to entertain evidence relating to the effect

of the moratorium on its damages claims. The appellate court rejected this ground of appeal,

finding that CPG had failed to preserve this issue by moving for a new trial. Id. at *8. Further,

the appellate court reversed the district court's award of damages (based on the § 1983 claims)

and reversed the award of attorney's fees that CPG had received by virtue of prevailing on the

procedural due process portion of its § 1983 claim. Finally, as to any award of attorney's fees

for purposes of the appeal, the Minnesota Court of Appeals denied the City's request for

attorney's fees, because the Court found merit to CPG's judicial review claim. Id. at *9. The

Minnesota Supreme Court denied further review. (Order of 7/19/11, CPG v. City of

Minneapolis, A10-1072 (Minn. 2011) [Doc. No. 39].)

### C. Federal Litigation

Plaintiffs filed the instant suit in July 2010 in state court. Defendant Goodman removed

the case to federal court in August 2010. In this case, Plaintiffs allege the same underlying

operative facts and also assert a violation of 42 U.S.C. § 1983, but allege the claims against

Councilmember Goodman, individually, as opposed to the City. Plaintiffs' § 1983 allegations

relate to both Defendant Goodman's actions regarding the Parc Centrale applications and the

2005 moratorium.

In her motion to dismiss, Defendant Goodman argues that: (1) Plaintiffs' claims are barred by the holdings in state court; (2) Plaintiffs' claims are barred by immunity; (3) Plaintiffs' claims fail on the merits; and (4) Plaintiffs should compensate Defendants for attorney's fees and costs in defending this litigation.

As noted, this Court initially stayed this matter, pending the outcome of the state court appeal.  By entering the stay, the motions to dismiss filed by former Defendants Mayer and Marn, as well as Defendant Goodman, were stayed. The Minnesota Court of Appeals issued its ruling in May 2011.  In December 2011, this Court vacated the stay, dismissed former Defendants Mayer and Marn from the case pursuant to Minnesota's anti-SLAPP statute, and deferred ruling on Defendant Goodman's Motion to Dismiss, except for the conspiracy claim against her, Mayer and Marn.   At the time of this Court's December ruling, it was unaware that the remanded hearing before the Minneapolis City Council had taken place only a few weeks earlier.  Consequently, the Court did not rule on Defendant Goodman's legal arguments for dismissal, including collateral estoppel, because the state court proceedings – which included the municipal remand – did not appear to be final.  The Court therefore requested supplemental briefing based on the status of the remanded hearing before the Minneapolis City Council.

The remanded hearing on CPG's land use applications was held before the Minneapolis City Council's Zoning and Planning Committee on October 27, 2011.  (City of Minneapolis Findings of Fact and Recommendation at 1, Ex. 1 to Myers Aff. In Supp. Supp'l Mem. [Doc. No. 49-1 at 5].)   Councilmember Goodman recused herself from the matter and was not present.

(Id.) The Zoning and Planning Committee found, upon a full review of the record, including the information presented at the October 27, 2011 public hearing, that the proposed plan did not conform to applicable zoning ordinances for height, multiple-family development and required yards. (Id. at 10 [Doc. No. 49-1 at 14].) The Committee therefore recommended the denial of CPG's land use applications. On November 4, 2011, the City Council adopted the Committee's Findings of Fact and denied CPG's applications. (Action by City of Minneapolis, Ex. 1 to Myers Aff [Doc. No. 49-1 at 4].)

## II.     DISCUSSION

### A.     Collateral Estoppel

As noted, Defendant Goodman raises a number of legal arguments in support of her Motion to Dismiss, including collateral estoppel, immunity and dismissal on the merits. Collateral estoppel, or issue preclusion, bars the re-litigation of issues which are both identical to those issues already litigated by the parties in a prior action and necessary and essential to the resulting judgment. Issue preclusion is founded on the principles of judicial economy. "By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, issue preclusion acts to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" Simmons v. O'Brien, 77 F.3d 1093, 1095 (8th Cir. 1996) (citing Allen v. McCurry, 449 U.S. 90, 94 (1980)). This Court gives a state court judgment the same preclusive effect it would be given under the law of the state in which it was rendered. 28 U.S.C. § 1738; W.F.M., Inc. v. Cherry County, 279 F.3d 640, 643 (8th Cir. 2002).

Under Minnesota law, the application of collateral estoppel requires the following

elements:

> (1) the issue was identical to one in a prior adjudication; (2) there was a final
> judgment on the merits; (3) the estopped party was a party or in privity with a
> party to the prior adjudication; and (4) the estopped party was given a full and fair
> opportunity to be heard on the adjudicated issue.

Pope Cnty. Bd. of Comm'rs v. Pryzmus, 682 N.W.2d 666, 669 (Minn. Ct. App. 2004) (citations

omitted).

### 1.     Issues Sought to be Precluded Must be the Same as in Prior Adjudication

In the sole remaining count in the Complaint, Plaintiffs assert a claim for violations of

§ 1983.  Plaintiffs allege that they had a protected interest in the Parc Centrale property and that

Goodman, acting under color of law, violated their procedural and substantive due process rights

under both the Minnesota and United States Constitutions, in the handling of the Parc Centrale

application.  (Compl. ¶ 47.)  In addition, Plaintiffs contend that Goodman violated Plaintiffs'

equal protection rights, along with their procedural and substantive due process rights, in the

imposition of a moratorium and refusal to grant a waiver.  (Id. ¶ 48.)  These issues are identical

to the issues in the state court action.  (See Am. Compl. ¶¶ 13-15; 21-24, Ex. 11 to Aff. of

Gregory J. Myers; Continental Property Group, 2011 WL 1642510 at *2 (setting forth the history

of the state court litigation, noting that while CPG had filed a § 1983 claim based on equal

protection, the district court allowed CPG to proceed under a due process theory and under the

Minnesota judicial review statute).)  While there is no judicial review claim in the instant suit,

the Court finds that the issues sought to precluded in this action are identical to the issues in the

prior adjudication.

### 2.      Final Judgment in State Court Action

The second element for issue preclusion – a final judgment – is now met.  The Minnesota

Court of Appeals issued its ruling on these very claims and the Minnesota Supreme Court denied

review of the lower court's decision.  The single claim for judicial review under Minn. Stat. §

462.361, subd. 1 for which the Minnesota Court of Appeals required remand to the City Council

was ultimately decided as of November 4, 2011.  The rulings on the state court claims are thus

final.

### 3.      Privity

"[T]he doctrine of collateral estoppel applies not only to parties to a prior action, but also

to their privies."  Belasuriya v. Bemel, 617 N.W.2d 596, 600 (Minn. Ct. App. 2000).  Privity

extends to those who had an active self-interest in the previous litigation.  State v. Lemmer, 736

N.W.2d 650, 661 (Minn. 2007).  Plaintiff CPG, a Minnesota corporation that owned the option

to purchase the property in question at the relevant time, was the named plaintiff in the state

court action.  (Compl. ¶ 2.)  Oak Grove now owns the same real property at issue.   (Id. ¶ 1.)

Plaintiff Hoyt is the sole owner of CPG and Oak Grove.  (Id. ¶ 3.) Given the common ownership

and/or identity of the three Plaintiffs in this action with the plaintiff in the state court action, the

Court finds that Plaintiffs are in privity.  Minnesota law does not require mutuality of all parties

for the invocation of collateral estoppel.  Mpls. Comm. Dev. Agency v. Buchanan, 268 F.3d 562,

566 (8th Cir. 2001) (citing Lyon Fin. Servs., Inc. v. Waddill, 625 N.W.2d 155, 158–59 (Minn.

Ct. App. 2001)).   Therefore, the fact that Defendant Goodman was not a named party in the state

court action does not preclude the application of issue preclusion.   Moreover the Court finds that

she is in privity with the named party in that litigation, the City of Minneapolis, as she serves as

a Minneapolis City Councilmember.  The allegations concerning her actions as a member of the

City Council formed the basis for much of the state court action, as well as the Complaint in this

suit.

### 4.     Full and Fair Opportunity to be Heard

In the state court action, CPG was unquestionably given a full and fair opportunity to be

heard with respect to its § 1983 due process and equal protection claims related to the land use

applications.   The Minnesota Court of Appeals noted that a due process claim requires a

plaintiff to demonstrate the existence of a property interest.  Continental Property Group, 2011

WL 1642510 at *4.  The appellate court found that "the property interest at stake in the context

of a denial of due process relative to a land use application is the application itself, not the title to

the underlying property."  Id. at *5.  Because CPG did not have a protected property interest in

its CUP and variance applications (as opposed to title to the physical property), the Minnesota

Court of Appeals concluded that the district court correctly dismissed CPG's substantive due

process claim, but erred by granting relief on CPG's procedural due process claim.  Id. at *6.

Therefore, CPG's substantive and procedural due process claims both failed.

As to CPG's state court claim based on equal protection, the Minnesota Court of Appeals

observed that the threshold inquiry for such a claim in a zoning case is "whether the denied

applicant was 'similarly situated' to successful applicants."  Id. at *7 (citing Barstad v. Murray

Cnty., 420 F.3d 880, 884 (8th Cir. 2005)). The Minnesota Court of Appeals found that because

the plaintiffs failed to identify similarly-situated applicants, the plaintiffs' equal protection claim

failed.  Id.

In the context of whether Plaintiffs were given a full and fair opportunity to be heard in

the adjudication below, this Court addresses two limited, remaining issues: (1) the extent to

which the Minnesota Court of Appeals' ruling on the state court judicial review claim affects

Plaintiffs' federal § 1983 claim based on due process; and (2) whether Plaintiffs were given a

full and fair opportunity to be heard related to the construction moratorium issue.

<strong>a.      Judicial Review Claim</strong>

As noted, Minnesota's judicial review statute, Minn. Stat. § 462.361, subd. 1, provides

that "person[s] aggrieved" by a city council's land use decision are entitled to judicial review in

district court. On the appeal of the state court decision, the Minnesota Court of Appeals ruled

that the City's decision in denying CPG's applications was arbitrary and capricious under the

judicial review statute. Id. at *6. The appellate court required the Minneapolis City Council to

conduct a new hearing and issue a new decision. Id. at *7. There is no claim under the judicial

review statute in the instant lawsuit.

In reaching its decision on CPG's judicial review claim, the Court of Appeals noted that

the applicable standard of review of a city council's decision is typically independent of the

findings and conclusions of the district court. Id. at *6 (citing VanLandschoot, 336 N.W.2d at

508). However, where a district court has allowed discovery and a trial to supplement the

record, an appellate court may use the district court's record in conducting its review. Id. (citing

Swanson v. City of Bloomington, 421 N.W.2d 307, 313 (Minn. 1988)). As there was a full trial

record in the state court action, the Minnesota Court of Appeals therefore reviewed it, noting the

district court's observation that CPG "conflate[d] two bases of relief with similar legal tests –

statutory judicial review of land-use decisions under Minn. Stat. § 462.361, subd. 1, and

substantive due process under the federal constitution." Id. at *6, n.2. The appellate court

13

further noted that while both tests use the words "arbitrary and capricious," they carry different

meanings. Id. In the context of evaluating a claim for judicial review brought by an aggrieved

land-use applicant, the reviewing court must determine whether the municipality's action was

reasonable. Id. (citing VanLandschoot, 336 N.W.2d at 508.) A decision is considered

unreasonable if it is "arbitrary and capricious" or if the reasons assigned by the municipality

have no validity or bearing on the general welfare of the area. Id. A decision may also be

considered arbitrary and capricious if the decision-maker "relied on factors it is not permitted or

intended to consider." Id. (citing In re Charges of Unprofessional Conduct Contained in Panel

File 98-26, 597 N.W.2d 563, 567 (Minn. 1999)). Similarly, an appellate court may invalidate a

land-use decision if the municipality did not act in good faith. Id.

The Minnesota Court of Appeals examined the district court's record with respect to its

findings concerning procedural due process. The appellate court reviewed these findings even

though it reversed the ruling of the lower court as to CPG's procedural due process claims under

the federal and state constitutions. As noted herein, the appellate court found that the procedural

and substantive due process claims failed as a matter of law because CPG lacked the requisite

property interest necessary to support a constitutional claim. While it rejected the plaintiff's

constitutional claims, the Minnesota Court of Appeals nevertheless relied on the district court's

procedural due process findings, and concluded that, under state law, the City Council relied on

factors it was not intended or permitted to consider in denying CPG's applications.[1]

---

[1] Specifically, the Minnesota Court of Appeals cited to the district court's record, in which the court found that Councilmember Goodman:

"took a position in opposition and exhibited a closed mind with regard to [CPG's] proposed project prior to hearing [CPG's] appeal"; "adopted an advocacy role in opposition to [CPG's] proposed project well before she discharged her

Such a finding is not inconsistent, as Minnesota law regarding judicial review of land-use decisions, unlike constitutional due process claims, is not limited only to those holding a property interest.  Rather, Minnesota decisions interpreting the judicial review statute requires that the "aggrieved person" have either a personal interest <u>or</u> a property interest at stake. <u>Stansell v. City of Northfield</u>, 618 N.W.2d 814, 818 (Minn. Ct. App. 2000) ("We therefore interpret 'person aggrieved' in Minn. Stat. § 462.361 to grant standing to a person when an action by the municipality adversely 'operates on his rights or property or bears directly upon his personal interest.'") (citations omitted), <u>review denied</u>, (Minn. 2001).  Therefore, the Minnesota Court of Appeals used the district court's procedural due process analyses in finding that the City Council's decision was "arbitrary and capricious" under the judicial review statute, even though it found that CPG's procedural due process claims failed under the state and federal constitutions.

The Court recognizes that in its earlier ruling, it observed that the Minnesota Court of Appeals' decision on the plaintiffs' judicial review claim impacted Plaintiffs' § 1983 claim based on due process.  (Order of 12/12/11 at 14 [Doc. No. 45].)  The Court made that comment outside the context of analyzing the merits of the parties' positions with respect to Defendant Goodman's Motion to Dismiss claims related to due process, and certainly outside the context of any final judgment on the legal claims implicated by that motion.  On reconsideration, and with

---

quasi-judicial duties"; and "was clearly involved in an effort not only to assist to organize and mobilize neighborhood opposition to the project, but also to sway the opinions of her fellow council members." The court also noted that "the opinion of the council member in whose ward a project is proposed is given substantial weight" by other members of the council.

<u>Continental Property Group</u>, 2011 WL 1642510 at *6.

the benefit of the parties' supplemental briefing, the Court finds that the state appellate court's

decision on the judicial review claim has no effect on Plaintiffs' claims in this action.   As

discussed above, the Minnesota Court of Appeals found that CPG's constitutional due process

claims failed due to the lack of a property interest.   The same claims are present in this case.

The judicial review claim, however, is not present in this case.   Moreover, the "arbitrary and

capricious" standard applied to the state law claim permitted the state court to find a violation of

the state statute, even in the absence of a constitutional due process claim.   Therefore, the Court

finds that Plaintiffs received a full and fair opportunity to be heard as to their constitutional due

process claims.   The judicial review claim in the state court action does not implicate the due

process claims in this action, and in any event, CPG was granted relief in the form of a remanded

hearing.

### b.      Claims Related to the Moratorium

Although Plaintiffs apparently do not contest that the other elements of collateral

estoppel are met with respect to their § 1983 claim regarding the moratorium, they argue that

they were not given a full and fair opportunity to be heard on this issue.   Plaintiffs contend that

they attempted "to present evidence regarding moratorium claims, but the trial judge concluded

that evidence only went to damages and should be presented in the second phase of the trial,"

thereby "preventing" Plaintiffs from presenting their moratorium claims at all.   (Plaintiffs'

Opp'n Mem. at 21.)   While issues related to the moratorium were raised in the state court

complaint, the district court judge concluded that the plaintiffs had belatedly asserted damages

calculations on the eve of the damages phase of trial, and excluded them.   (District Court Order

of 12/21/09, Ex. 16 to Myers Aff.)

The Court of Appeals acknowledged that the moratorium claims were raised, stating,

> On appeal, CPG does not challenge the district court's dismissal of the statutory
> or constitutional claims that it might have had arising out of the moratorium's
> allegedly arbitrary and capricious nature – CPG's substantive arguments are
> aimed entirely at the city's denial of its CUP and variance applications, rather
> than the moratorium. But CPG does argue that the district court should have
> allowed it to present evidence of *damages* related to the moratorium, even though
> the court found liability only with respect to the fairness of the hearing on the
> CUP and variance requests.

Continental Property Group, 2011 WL 1642510 at *8 (emphasis in original). The appellate court

found that because CPG challenged the manner in which the district court directed that evidence

was offered for trial, CPG was obliged to move for a new trial in order to preserve its objection.

Id. Because it failed to do so, the Minnesota Court of Appeals found that CPG failed to preserve

this issue for appeal.

The Eighth Circuit has applied collateral estoppel to bar subsequent actions in which the

estopped party failed to avail itself of an earlier opportunity to litigate its claim:

> However, it is not required for issue preclusion that the issues be raised, or even
> argued, with the same level of clarity or intensity in each proceeding. For issue
> preclusion to apply, the issue raised in the second proceeding need only have been
> raised in the first proceeding by the party sought to be precluded and necessarily
> determined on the merits in a proceeding affording a full and fair opportunity to
> litigate the issue. There is no further requirement that the party actually take
> advantage of that opportunity to fully and fairly litigate the issue.

Simmons, 77 F.3d at 1097, n.4.

While CPG did not raise the moratorium issue in its proposed findings of fact and

conclusions of law following the liability trial in state court, allegations concerning the

moratorium were pled in the state court complaint and CPG raised the issue at other times during

the bifurcated state court trial proceedings. Clearly, Plaintiffs had the opportunity to litigate the

issue below, as the Minnesota Court of Appeals found. Courts have applied issue preclusion

17

where a party fails to take advantage of such an opportunity.  Id.; see also Irving v. Dormire, 586
F.3d 645, 649 (8th Cir. 2009) (citing Simmons); Bechtold v. City of Rosemount, 104 F.3d 1062,
1068 (8th Cir. 1997).

In the December 12, 2011 Order granting the motion to dismiss filed by former Co-
Defendants Mayer and Marn, this Court, in dicta, commented that the only remaining allegations
that might support a § 1983 claim against Mayer and Marn were those that were "not officially
adjudicated on the merits in state court, i.e., Plaintiffs' allegations regarding the 2005
moratorium."  (Order of 12/12/11 at 11.)  In making that comment, the Court was not ruling on
the viability of such a claim, nor even analyzing whether an adjudication on the merits had
occurred.  However, the Court acknowledges that its choice of language could have been more
precise.  As observed by Wright & Miller, the phrase "on the merits" is "an unfortunate phrase,
which could easily distract attention from the fundamental characteristics that entitle a judgment
to greater or lesser preclusive effects."  18A Charles Alan Wright & Arthur R. Miller, Federal
Practice and Procedure § 4435 (2d ed. 2002).  This is because "[t]he characteristics that
determine the extent of preclusion may have little to do with actual resolution of the merits,
although the paradigm will always be a judgment entered after full trial of all disputed matters."
Id.  For involuntary dismissals for a plaintiff's failure to prosecute or to comply with the rules of
procedure or any order of the court, see, e.g., Fed. R. Civ. P. 41(b); Minn. R. Civ. P. 41.01(b)
and 41.02, "[s]uch dismissals operate as an adjudication on the merits unless the court specifies
otherwise in its order of dismissal."  Id. at 139.  In contrast, involuntary dismissals for lack of
jurisdiction, improper venue or failure to join a party, do not operate as an adjudication on the
merits.  Id.

The Minnesota Court of Appeals' ruling recognized that in September 2009, the district court dismissed all of CPG's claims, except for its procedural due process claim.   Continental Property Group, 2011 WL 1642510 at *8.   That dismissal included "the statutory or constitutional claims that [CPG] might have had arising out of the moratorium's allegedly arbitrary and capricious nature." Id.   When the plaintiff attempted to include damages related to the moratorium in the damages phase of trial, along with new evidence that the court had "not allowed" it to present during the liability phase, the district court denied CPG's request and clarified that the plaintiff's claims with respect to the moratorium were dismissed with prejudice. Id.   Because CPG did not move for a new trial, the Minnesota Court of Appeals found that it failed to preserve the moratorium issue for appeal.   Id.

The Court considers the issue of the moratorium, as part of Plaintiffs' § 1983 claim, to have been adjudicated on the merits for purposes of collateral estoppel.   Not only did Plaintiffs have a full and fair opportunity to litigate this issue in state court as a factual matter, during that litigation, the requisite underpinnings of a full and fair opportunity to be heard were met: CPG was represented by competent legal counsel, had a full opportunity to conduct discovery and presented its case at trial.   See United States Fire Ins. Co. v. Diocese of Winona, 503 F. Supp.2d 1129, 1134-34 (D. Minn. 2007) (party had a full and fair opportunity to litigate its case when it was represented by counsel and had ample time to conduct discovery and present a defense) (citations omitted).

For all of these reasons, the Court thus concludes that application of collateral estoppel in this case is fair and effectuates one of the underlying goals of the doctrine – preventing parties from having more than one opportunity to litigate the same issue.   In addition, application of

collateral estoppel in this case also advances the goal of judicial economy. The Court finds no

unfairness to Plaintiffs, as the possible application of collateral estoppel must have been a

consideration when it filed the instant action. Nevertheless, this Court declines to require

Plaintiffs to bear the costs and fees borne by Defendants, as the Minnesota Court of Appeals

likewise held. Defendant's request for expenses and fees incurred in defending this action is

therefore denied.

**B.      Other Legal Arguments for Dismissal**

While Defendant advances other legal grounds in support of its Motion to Dismiss,

because the Court has concluded that collateral estoppel bars all of the issues raised in Plaintiffs'

sole remaining claim, the Court will not address any additional grounds for dismissal.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Defendant Goodman's Motion to Dismiss [Doc. No. 3] is **GRANTED IN PART**

as to the dismissal of the § 1983 claim; and **DENIED IN PART** as to

Defendant's request for fees and costs; and

2.      Plaintiffs' claims against Defendant Goodman are **DISMISSED WITH**

**PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:    April 2, 2012

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Court Judge